FILED

FEBRUARY 8, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**08 C 843**

| | | |
|---|---|---|
| Milton Luster | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| Illinois Department of Corrections | ) | Judge: **JUDGE KENNELLY** |
| | ) | **MAGISTRATE JUDGE MASON** |
| Defendant. | ) | Magistrate Judge: |
| | | <u>JURY DEMAND</u> |

<u>COMPLAINT OF DISCRIMINATION</u>

Now Comes Complainant, MILTON LUSTER, by and through his attorneys, the Law Office of David E. Neely & Associates, and files this complaint of discrimination based upon race discrimination, sex discrimination, retaliation and  constructive discharge and wrongful discharge against Dwight Correctional Center and The Illinois Department of Corrections, and states:

<u>INTRODUCTORY PARAGRAPH</u>

This matter was initially filed with the EEOC on December 26, 2006. However, the EEOC did not assume jurisdiction over the charge within 180 days and no suit was filed by the U.S. Department of Justice. On October 7, 2007, Plaintiff requested a Right to Sue letter. On December 14, 2007, the U.S. Department of Justice issued Plaintiff a Right to Sue under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above named defendant within 90 days of receipt of the Notice. **(Plaintiff's Exhibit A)**.  Plaintiff Milton Luster alleges race and sex discrimination, retaliation and constructive and wrongful discharge, which directly and adversely affected his employment, salary, other earnings or compensation, advancement, opportunities, job security and benefits as well as his physical and emotional well being in violation of 42 U.S.C. section 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e et seq.

<u>JURISDICTION AND VENUE</u>

The jurisdiction of this court under the Civil Rights Act of 1964, as amended, 78  Stat. 253, as amended, 28 U.S.C., 1343 (a)(4) et seq., the Civil Rights Act of 1871, 42

1

U.S.C. Section 1985 (3), and Title 28 U.S.C.A., Rule 23 of the Federal Rules of Civil Procedure. This Court has jurisdiction over such claims pursuant to 28 U.S.C. Sections 1331 and 1343(4). This Court has jurisdiction over related state claims under the doctrine of pendent jurisdiction pursuant to 28 U.S.C. 1367. Venue is proper in the Northern District of Illinois since the conduct and action complained of occurred in this district.

## THE PARTIES

Plaintiff, Milton Luster resides in the City of Odell, Illinois, County of Livingston County; and Defendant Illinois Department of Corrections maintain facilities and offices throughout the State of Illinois.

## STATEMENT OF FACTS

### A. Work History

1. MILTON LUSTER is an African American male citizen of the United States residing in the City of Odell, County of Livingston and State of Illinois;

2. The Illinois Department of Corrections is an agency of the State of Illinois with 500 + employees;

3. The cause of discrimination is based upon race, sex, retaliation and constructive discharge;

4. On August 8, 1988, Milton Luster was hired by the Illinois Department of Corrections as a "Correctional Officer" at the Joliet Correctional Center;

5. As a correctional officer, Milton Luster was required to join the American Federation of State County and Municipal Employees (AFSCME) (wages based upon union negotiation with management).

6. On or about December 30, 1995, Milton Luster applied for and received a lateral transfer to Robinson Correctional Center in Robinson Illinois, Crawford County;

7. On or about September 15, 1999, Milton Luster was promoted to Correctional Sergeant at the Robinson Correctional Center.

8. On or about May 15, 2000, Milton Luster was promoted to Correctional Lieutenant and transferred to Decatur Correctional Center in Macon County Illinois;

9. On or about July 15, 2001, Milton Luster was promoted to Correctional Caption, a non-union or "merit compensation" position (wages based upon performance) and transferred to Dwight Correctional Center;

10. On or about August 2003, the Department of Corrections was restructured and Milton Luster's Correctional Caption position was eliminated;

11. After the elimination of his position, Milton Luster was demoted to Correctional Lieutenant, and again became a union employee.

**B. Work Performance**

12. All of Milton Luster's performance evaluations are good.

13. At all times Milton Luster's work performance was good

14. At all times Milton Luster was meeting his employer's expectation.

**C. Supervisors**

15. As a Correctional Lieutenant, Milton Luster's first supervisor from August 2003 until January 2004 was Major Rebecca Buntin, a white female.

16. As a Correctional Lieutenant, Milton Luster's second supervisor from January 2004 until December 2004 was Major Michael Boggess, a white male.

17. As a Correctional Lieutenant, Milton Luster's third supervisor from December 2004 until January 2005 was Major Felipe Zavala, a Hispanic male.

18. As a Correctional Lieutenant, Milton Luster's fourth supervisor from January 2005 until his constructive discharge in September 2006 was Major Tamela Quinley, a white female.

19. African American "Majors" are substantially underrepresented within the Illinois Department of Corrections and specifically at Dwight Correctional Center;

**D. Reporting Rule Violations**

20. As a Correctional Lieutenant, Milton Luster's had up to 50 correctional officers and sergeants reporting to him as direct reports.

21. As a Correctional Lieutenant, Milton Luster's was required to either file documented incident reports for rule infractions and forwarded to his direct supervisor Major Tamela Quinley, a white female.

22. During Milton Luster's career with the Department of Corrections he has written over 200 documented incident reports that were forwarded to his supervisors;

23. All incident reports are forwarded to the Warden, Marry Sigler, a white female;

3

24. After the documented incident report is forwarded to the Warder, she makes a determination of how to handle the incident report;

25. Milton Luster was retaliated against by the predominantly white and female dominated upper management structure at Dwight Correctional Center because he wrote an incident report against a menacing white female who alleged sexual harassment two days after the incident report was written and filed against her.

**E. Similarly Situated White and Female Employees who File Complaints Against White Female Officer**

26. On or about August 10, 2006, Correctional Officer Steven Mead, an white male, wrote an incident report against Officer Christine Cole, a white female, alleging that she intentionally left the mailbag for C-10 after the roll call which is her responsibility and after placing the mailbag on her desk, she became very disagreeable and made the following statements:

*"fuck that mailbag, you can leave that motherfucker in the fucking MPB" followed by other comments such as you "little prick faced motherfucker", you heard me you little pricked face motherfucker", "you better watch out" and "I am a better officer than you". (See Exhibit D - attached incident report dated August 8, 2006)*

27. In Officer's Cole response to Officer's Mead's incident report, she alleged that Officer Mead harassed and threatened her and that "Mead is a good friend of Lt. Milton Luster".

*(incident report dated August 8, 2006)*

28. Officer Mead was charged with violation of AD 03.02.108, Standards of Conduct –I-B & Policy Statement, page 12/#8-Unprofessional Conduct; on August 10, 2006.

29. As a result of the Coleman's allegations against Officer Mead, he was reprimanded.

30. As a result of Officer's Mead complaint against Officer Cole, she was suspended.

31. The Dwight Correctional Center administration treats white males and African American females who file claims against Officer Christine Cole, a white female, differently than Milton Luster, an African American male. **(Statement by Elizabeth A. Thorson).**

32. Officer Christine Cole, a white female, was allowed to make false accusations concerning why Officer M. Eggleston, a white female, transferred from Dwight Correctional Center without being disciplined. **(statement of Officer M. Eggleston).**

**E. Adverse Employment Action**

33. Milton Luster was constructively discharged from his job because he, as an African American male supervisor, wrote an incident report against Officer Christine Cole a white female, which constituted disparate treatment race and gender discrimination in violation of Title VII.

34. Similarly situated white and female correctional employees who write incident reports against Officer Cole were not constructively discharged.

35. Milton Luster had never been disciplined as an employee of the Illinois Department of Corrections prior to this 30 day suspension and recommended discharge.

36. On or about June 6, 2006 Milton Luster was making rounds in the housing units and had a discussion with correctional officer Bruce Hagie, a white male, about the topic of food and fruit;

37. During the discussion described in the preceding paragraph, Christina Cole, a white female, continued to interrupt their conversation;

38. During said conversation, Milton Luster was explaining to Bruce Hagie, a white male, that a prune is a dried grape;

39. Thereafter Christina Cole, a white female, intervened and disagreed with Milton Luster;

40. Christina Cole said to Milton Luster that a raisin is a dried grape.

41. During said conversation, Milton Luster repeated that a prune is a dried grape and Christina Cole, a white female, replied "Look Bitch I'm tied of you disagreeing with me".

42. After the statement by Christina Cole, a white female, Milton Luster asked her to apologize for calling him a "bitch" and threatened to document her statement in an incident report if she refused to apologize.

43. Christina Cole, a white female, refused to apologize for calling Milton Luster, her supervisor, a "bitch".

44. Milton Luster left the area of the segregation unit and went to his shift commander's office, Major Tamela Quinley, a white female, but she was not at work, so he reported the incident (verbal and written) to Lieutenant Timothy Lovell, a white male **(Adult and Juvenile Divisions Incident Report dated June 6, 2006).**

45. After discussing the matter with Lieutenant Timothy Lovell, a white male, the two decided to wait until Major Tamela Quinley, a white female, returned to work so she could decide how to handle the matter;

46. On or about June 8, 2006, Major Tamela Quinley, a white female, returned to work, signed off on the incident report by Milton Luster against Ms. Cole and sent it up to the Warden;

47. From Friday, June 9, 2006 through Saturday June 10, 2006, Milton Luster was off work;

48. On Sunday June 11, 2006, Milton Luster returned to work and was escorted to the Warden's office by Assistant Warden Tamela Harris, an African American female;

49. When Milton Luster met with Warden, Marry Sigler, a white female she took his badge, his identification and placed him on administrative leave without providing him a reason;

50. Milton Luster was then escorted from his place of employment by the Union Vice President, officer Dunlap, a white male;

51. On June 12, 2006, Milton Luster received a letter from Warden Sigler dated June 11, 2006 officially placing him on administrative leave with pay **(Letter dated June 11, 2006);**

52. On or about June 13, 2006 and June 19, 2006, the Director of Central Management Services and the Agency Head signed an "action form" placing Milton Luster on administrative leave **(Illinois Department of Central Management Services Personnel/Position Action Form dated June 13-June 19, 2006);**

53. On or about June 12 2006, Milton Luster received a telephone call from Warden Marry Sigler's office and was required to meet with investigator Larry Sims, a white male, because Christina Cole, a white female, alleged that he attacked her on May 25, 2006 in the segregation unit and put "hickies" on her neck;

54. The Illinois Department of Corrections and Dwight Correctional Center failed to conduct an proper investigation free of race and sex discrimination.

55. At all times Milton Luster denied the slanderous and untrue allegations by Christina Cole, a white female.

F. **Cole's Witnesses**

56. Christina Cole, a white female, produced Heather Jordan, a white female and Kenneth Donnalls, a white male, as her witnesses **(the accuser and her witnesses "carpool" together everyday -See Memo from Tucker to Mead dated August 17, 2006, statement dated September 19, 2006 from Elizabeth A. Thorson, Letter from Correctional of-**

**ficer M. Eggleston);**

57. At no time did alleged witness Heather Jordan, a white female; Kenneth Donnalls, a white male, provide specific and detailed information about the allegations against Milton Luster, nor did they alleged that they tried to stop the alleged assault by Milton Luster, nor did they report the alleged incident to prison officials or laws enforcement. **(letter dated July 24, 2006 from Joseph Burke to Warden Sigler as Exhibit "E" and Investigational Interviews);**

58. Between May 25, 2006 and June 6, 2006 *(the date of the Cole incident report),* no criminal complaint was filed or allegations made by Officer Christine Cole against Milton Luster.

59. The false, slanderous, retaliatory race and gender based conduct by Heather Jordan, Kenneth Donnalls, and Christina Cole was documented by Larry Sims **(Report of Investigation)** and used by the employer as a pretext to discharge Milton Luster.

60. The complaint filed by Christina Cole is dated June 8, 2006, at 4:43 PM, two days after Milton Luster's Incident Report against her **(Incident Report by Christina Cole dated June 9, 2006).**

61. On or about the second week of July 2006 Milton Luster received a telephone call from one of the Warden's secretaries to report to the institution to talk to Mr. Simms again.

62. On or about the second week of July 2006, Milton Luster discussed Ms. Cole's complaint with Mr. Simms who said "Just give me something to help yourself out".

63. On August 1, 2006, the Assistant Warden, Tamela Harris sent a memorandum to the Employee Review Hearing Officer referring Milton Luster to the Employee Review Officer for "Violation of statutory offenses regarding battery, official misconduct and obstruction of justice" and "violation of Department Rules regarding Conduct of Individual, and Impeding an Investigation" **(Memo dated August 1, 2006);**

64. On or about August 1, 2006, Milton Luster received a memorandum to report to the institution for an employee review hearing on the 7th of August 2006 for the following reasons:

- "Violation of Department Rules, Part 120-Rules of Conduct: section 120.30, Conduct of Individuals;
- Section 120.40, Compliance with Laws and regulations; Section 120.95, Giving False Information; and

- Section 120.100, Violation of Rules; as a result of External Investigation case #C06-DWI-253"

65. On August 7, 2006, Milton Luster received an employee review hearing in which he attended and was accompanied by the union representative Glen Davidson, an African American male.

66. The review officer, Janice Emms, a white female, read the charges at which time Milton Luster denied each and every false allegations; and he requested that the Employer check his and the complainant timesheets and unit log books at the institution. This request, if honored, would have shown that Milton Luster was not even in the alleged unit with Officer Cole at the time of the alleged incident. The employer refused to conduct such an investigation and denied Milton Luster a fair hearing in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, Section 1981 of the Civil Rights Act and Title VII.

67. The August 7, 2006 hearing was not recorded, was improper and merely a kangaroo investigation to railroad Milton Luster out of his job;

68. On or about August 18, 2006, Milton Luster received a 4-page letter from Warden Marry Sigler dated August 15, 2006 and signed August 17, 2006, advising him that Janice Emm recommended discharge and that she concurred **(Letter dated August 15, 2006 and signed August 17, 2006);**

69. Milton Luster reasonably believes that his 30 day suspension and recommended discharge ratified by the Warden was motivated by his race and sex and constituted constructive discharge because it forced him to resign;

70. To date, Milton Luster has not been charged with a crime nor has he been contacted by law enforcement or the Livingston County State's Attorney Office);

71. Officer Cole received a 3 and 5 day suspension for failure to report an incident in a timely manner;

72. Milton Luster time sheet for 2006 support his position and to date he has not been called back to work;

**Count I:**
**(Discrimination against Milton Luster because of his race in violation of section 1981 and Title VII)**

73. Plaintiff realleges paragraphs 1 through 72 as paragraph 73 of Count I.

74. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to fail to hire, discharge, or otherwise discriminate against any individual because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-3(a).

75. Under section 1981, "all persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981.

76. Milton Luster has been denied the same rights and privileges enjoyed by white citizens.

77. Milton Luster is the victim of intentional discrimination based upon his race and sex. *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999); *see also Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 338 (7th Cir. 2002) (noting that Title VII and section 1981 discrimination claims are analyzed in the same manner).

78. Plaintiff may establish this discrimination through either the "direct" or "indirect" method of proof.

79. To meet his *prima facie* burden under the *McDonnell Douglas* burden shifting analysis, Plaintiff must establish the following: (1) he was a member of a protected class; (2) he was performing his job satisfactorily; (3) the employer took an adverse employment action against him; and (4) the employer treated at least one similarly situated employee outside of his protected class more favorably. *Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1011 (7th Cir. 2004); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

80. Milton Luster is a member of the African American population;

81. The circumstantial evidence in this case allows the trier of fact to infer that intentional discrimination occurred by the decision makers. *Id.*

82. Circumstantial evidence consists of "ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994).

83. The Seventh Circuit recognizes three types of circumstantial evidence of intentional discrimination: (1) suspicious timing, ambiguous statements, behavior or comments directed at other employees in the protected group, and other "bits and pieces from which an inference of discriminatory intent might be drawn . . .; (2) evidence "whether or not rigorously statistical," that employees similarly situated to the plaintiff but outside the protected class received systematically better treatment; or (3) evidence that the plaintiff was qualified for a job in question, but passed over in favor of, or replaced by, a person not in the protected group and the employer's stated reasons for the difference in treatment is not worthy of belief. *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720-21 (7th Cir. 2005) [*40]  (citing *Troupe*, 20 F.3d at 736).

84. Although no one piece of circumstantial evidence seems definitive, when taken together, it does form a convincing mosaic that allows a decision maker to infer intentional discrimination. *See Troupe*, 20 F.3d at 736 (noting that each type of circumstantial evidence can be used on its own or together with other types of circumstantial evidence to establish discrimination."

85. The Illinois Department of Corrections and the Dwight Correctional Center has a pattern or practice of excluding African Americans from its workforce, its managerial ranks and its investigatory process.

86. The Illinois Department of Corrections and the Dwight Correctional Center selectively enforced its rules against Plaintiff, an  African American employee by failing to properly and fairly investigate the initial incident report by Plaintiff against correctional officer Cole and by giving officer Cole's untimely and retaliatory complaint against Plaintiff superior treatment solely because of sex and race;

87. Officer Cole received no disciplinary action based upon Plaintiff's incident report against her.

88. Plaintiff has never received any type of written warning or written reprimand for having violated any Department Rules;

89. Officer Cole violated Department rules and was not disciplined because the complaint against her was made by Plaintiff, an African American supervisor;

90. A reasonable jury or fact finder could infer that the selective investigation and enforce-
ment of Department Rules is based upon racial discrimination and is a "convincing mo-
saic" of circumstantial evidence that allows a decision maker to infer intentional dis-
crimination. *Rhodes*, 359 F.3d at 504

## Count II:

### Discrimination against Milton Luster because of his sex in violation of section 1981 and Title VII

91. Plaintiff realleges paragraph 1 through 90 as paragraph 91 of Count II;

92. Plaintiff t, an African American male, filed an incident report against Officer Cole, a
white female.

93. Officer Cole maliciously and intentionally retaliated against Plaintiff by deflecting viola-
tions from her through allegations of sexual harassment;

94. The Dwight Correctional Center is predominated by white employees and Livingston
County is a predominant white community.

95. The warden and the investigators were prejudiced because a white woman made allega-
tions that a Black man attacked her;

96. Plaintiff was discharged because a white woman made false allegations against him and
the employer refused to conduct a proper investigation;

97. The Department failed to conduct a proper investigation solely because Plaintiff is an Af-
rican American male;

## Count III:

### (Retaliation against Milton Luster in violation of section 1981 and Title VII)

98. Plaintiff realleges paragraphs 1 through 97 as paragraph 98 of Count III

99.  In the context of Title VII, harassment involves conduct that unreasonably interferes with
a person's work performance or creates an intimidating, hostile, or offensive work envi-
ronment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S. Ct. 2399, 91 L. Ed.
2d 49 (1986).

100.    Officer Cole's harassed Plaintiff by making false allegations because Plaintiff filed an incident report against her;

101.    Officer Cole used her sex and her race to gain an unfair advantage over Plaintiff.

102.    Throughout the administrative hearing process Milton Muster complained that he was being discriminated     against because of his race and sex;

103.    Throughout the administrative hearing process, Milton Luster raised the issue of race and sex discrimination in the investigation and hearing process pertaining to the incidents described herein pursuant to 42 U.S.C. § 2000e-3(a).

104.    Milton Luster was engaging in "protected activity" when he alleged discrimination.

105.    Milton Luster: 1) engaged in protected activity, 2) job performance met the legitimate expectations of his employer, 3) employer took a materially adverse employment action against him, and 4) he was treated less favorably than similarly situated white and female employees who have filed incident reports against Officer Cole and who did not engage in protective activity.

### Count IV.
### (Constructive Discharge)

106.    Plaintiff realleges paragraphs 1 through 105 as paragraph 106 of Count IV.

107.    Milton Luster was constructively discharged because of his race and sex;

108.    Constructive discharge, like actual discharge, is a materially adverse employment action. See, e.g., Fitzgerald v. Henderson, 251 F.3d 345, 357-58 (2d Cir. 2001).

109.    To demonstrate constructive discharge, a plaintiff must show that his employer acted in a manner so as to have communicated to a reasonable employee that he will be terminated, forcing the employee resign. See generally Bragg v. Navistar Int'l Transp. Corp., 164 F.3d 373, 377 (7th Cir. 1998) ("Constructive discharge exists to give Title VII protection to a plaintiff who decides to quit rather than wait around to be fired."); see also, e.g., Burks v. Oklahoma Publ'g Co., 81 F.3d 975, 978 (10th Cir. 1996); Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188-89 (2d Cir. 1987); cf. Hunt v. City of Markham, Illinois, 219 F.3d 649, 655 (7th Cir. 2000) ("A person who is told repeatedly that he is not wanted, has no future, and can't count on ever getting another raise would not be acting unreasonably if he decided that to remain with this employer would necessarily be incon-

sistent with even a minimal sense of self-respect, and therefore intolerable."); Henn v. Nat'l Geographic Soc'y, 819 F.2d 824, 829-30 (7th Cir. 1987).

110.    Milton Luster was systematically removed from his job duties, stripped of his badge and identification, placed on suspension with pay and railroaded through an unfair hearing process just because of his race and sex; (see, e.g., Marcing v. Fluor Daniel, Inc., 826 F. Supp. 1128, 1141 (N.D. Ill. 1993), rev'd in part on other grounds, 36 F.3d 1099 (7th Cir. 1994)).

111.    Milton Luster need not face financial ruin in order to maintain a constructive discharge claim ( Marcing, 826 F. Supp. at 1141).

112.    Milton Luster's is facing financial ruin.

113.    Plaintiff's sex and retaliation claims support a constructive discharge claim.

114.    Milton Luster intended that his constructive discharge claim be a part of the EEOC administrative charge.

115.    The constructive discharge of Milton Luster by the Illinois Department of Corrections was motivated by race and sex discrimination. Simpson v. Borg-Warner Auto., Inc., 196 F.3d 873, 877 (7th Cir. 1999).

116.    The non-discriminatory reasons for the disciplinary actions and constructive discharge of Milton Luster asserted by the Illinois Department of Corrections and Dwight Correctional Center are a mere pretext for racial and gender discrimination.

117.    Milton Muster, as an African American male is: (1) a member of a protected class; (2) was performing his job satisfactorily; (3) has experienced an adverse employment action; and (4) similarly situated individuals are treated more favorably; and he has exhausted all administrative remedies.

## COUNT V

## DAMAGES AND RELIEF

118.    Plaintiff realleges paragraphs 1 through 117 and each Count above as paragraph 118 of Count V;

WHEREFORE, Plaintiff demands relief against defendent as to each count as follows:

a. Preliminary and permanent injunctions against the Illinois Department of Corrections and its officers, owners, agents, successors, employees, representatives, and any and all persons acting

in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

b.      A judgment declaring that the practices complained of herein are unlawful and violative of 42 U.S.C. §§ 2000(e) et seq., Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981;

c.      An assignment of Plaintiff to the job he  would now be occupying but for the Illinois Department of Corrections discriminatory practices;

d.      An adjustment of the wage rates, benefits, and seniority rights for Plaintiff to that level which Plaintiff would be enjoying but for the Illinois Department of Corrections discriminatory practices;

e.      Granting an order restraining the Illinois Department of Corrections from any further retaliation against any Plaintiff for participation in any form in this litigation;

f.      All damages which Plaintiff have sustained as a result of the Illinois Department of Corrections conduct, including back pay, front pay, general and special damages for lost compensation, commissions and job benefits he would have received but for the Illinois Department of Corrections discriminatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

g.      Front pay to Complainant until such time as he can be placed in the same position he would now have occupied but for the Illinois Department of Corrections discriminatory practices;

h.      Awarding Plaintiff his costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

j.      Pre-judgment and post-judgment interest, as provided by law; and

k.      Granting Plaintiff such other and further relief as this Court finds necessary and proper.


**PLAINTIFF DEMANDS TRIAL BY JURY**.

s/David E. Neely

David E. Neely & ASSOCIATES P.C.
8401 So. Luella
Chicago, Il. 60617
(312) 315-8241
deneely1@prodigy.net

## VERIFICATION BY MILTON LUSTER

I, __MILTON LUSTER,__ under penalty of perjury, do hereby state and affirm that I have read the contents of the Complaint and certify and verify that the statements therein are true and correct to the best of my knowledge and belief

__s/MILTON LUSTER__

Signed and sworn to before me this 7th day of February, 2008.

OFFICIAL SEAL
__s/DAVID E. NEELY__    MY COMMISSION EXPIRES:  __5/18/2008__
NOTARY PUBLIC-STATE OF ILLINOIS